ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| TRAFON GROUP INC. <br><br> Recurrente <br><br> v. <br><br> LUMA ENERGY LLC; LUMA ENERGY SERVCO, LLC <br><br> Recurrido | TA2026RA00180 | *Revisión Administrativa* procedente de la Junta Reglamentadora de Servicio Público, Negociado de Energía de Puerto Rico <br><br> Querella Núm. NEPR-QR-2025-0358 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparece ante nos TraFon Group Inc. (TraFon o recurrente) y solicita la revocación de la *Resolución Final y Orden* emitida el 20 de marzo de 2026 por el Negociado de Energía de Puerto Rico (Negociado o agencia recurrida). Mediante el pronunciamiento administrativo se declaró no ha lugar una *Querella* interpuesta por TraFon por suspensión de servicios de electricidad.

Por los fundamentos que exponemos a continuación, se confirma el dictamen administrativo impugnado.

**I.**

TraFon Group Inc. es una empresa que hace negocios en el sector de infraestructura y distribución de alimentos, entre otros. La presente causa versa sobre la cuenta industrial asignada a TraFon para el servicio eléctrico con Luma Energy ServCo, LLC, Luma Energy LLC (Luma o recurrida). Por sucesos que resultaron en la desconexión del servicio eléctrico el 3 de diciembre de 2025, TraFon instó una *Urgente Querella Jurada de Entredicho Provisional, Interdicto Preliminar y Permanente* contra Luma ante el Negociado de Energía de Puerto Rico.

En síntesis, TraFon alegó que Luma actuó de manera ilegal al suspender el servicio eléctrico correspondiente a la cuenta industrial, el 29 de octubre de 2025, sin notificación previa, según requerido por el Art. 6.27 de la Ley Núm. 57-2014, 22 LPRA sec. 1054z, así como el Art 6.02 del *Reglamento sobre el Procedimiento para la Revisión de Facturas y Suspensión del Servicio Eléctrico por Falta de Pago* (Reglamento Núm. 8863). Según sus alegaciones, TraFon admitió tener una deuda a favor de Luma por la cantidad de $8,315,160.88 (ocho millones, trescientos quince mil, ciento sesenta dólares con ochenta y ocho centavos) en la cuenta industrial y $1,752,147.71 (un millón, setecientos cincuenta y dos mil, ciento cuarenta y siete dólares con setenta y un centavos). Asimismo, consignó haber recibido avisos de suspensión o corte del servicio eléctrico para la cuenta comercial, el 3 de enero de 2025, el 12 de septiembre de 2025 y el 14 de octubre de 2025, no así para la cuenta industrial. De igual forma indicó que, sostuvo múltiples reuniones para lograr un acuerdo en ambas cuentas, y su gestión no resultó en aceptación de su propuesta por parte de Luma.

En reacción a la desconexión del servicio, TraFon solicitó la intervención del Negociado porque presuntamente Luma no cumplió lo requerido, al no enviar una notificación escrita con apercibimientos de rigor con 10 días de anticipación, así como de forma telefónica 48 horas antes y previo a iniciar el proceso de suspensión del servicio. A esos efectos, suplicó la expedición de una orden para la reconexión del servicio eléctrico. Además, solicitó una declaración de nulidad de los actos realizados por Luma y una orden sobre el cumplimiento específico de las referidas normas, previo a cualquier suspensión de los servicios eléctricos.

En atención a lo antes y las súplicas reiteradas de TraFon, el Negociado emitió una *Orden* el 6 de noviembre de 2025, en la que autorizó la reconexión del servicio eléctrico. Al día siguiente se opuso Luma. En una *Urgente Moción de Reconsideración de la Orden emitida el 6 de noviembre de 2025*, Luma indicó que, TraFon admitió

la deuda de más de nueve millones de dólares a su favor. Resaltó que, contrario a lo expuesto por TraFon, Luma ha cumplido mediante notificaciones previas con los debidos apercibimientos sobre las consecuencias por incurrir en un incumplimiento de pago. Incluso informó que, las partes han logrado acuerdos de pago que corresponden desde junio de 2025 y, a pesar de las notificaciones, TraFon no ha cumplido con el pago de la deuda. Junto a su escrito incluyó copia de las comunicaciones dirigidas al recurrente del 27 de junio de 2025, 3 de julio de 2025 y 10 de octubre de 2025, respectivamente, así como, otros correos electrónicos y respuestas de TraFon. Por entender que cumplió las exigencias normativas y el debido proceso de notificación, Luma solicitó reconsideración de la orden de reconexión que implica un proceso técnico complejo con impacto económico, entre otras consideraciones.

Atendido el referido petitorio de reconsideración, el Negociado lo declaró Ha Lugar por el momento y señaló una vista evidenciaria, la cual se celebró el 10 de noviembre de 2025. Durante la referida audiencia, se admitió prueba documental y los testimonios de los representantes de las partes.

Evaluado lo antes, el oficial examinador concluyó que, Luma cumplió el requisito impuesto en el Art. 6.27(f) de la Ley 57-2014, *supra*, ya que surgen apercibimientos escritos sobre la eventual suspensión de servicios, el 3 de julio de 2025, 10 y 16 de octubre de 2025, respectivamente. En cuanto al presunto incumplimiento con el Art. 6.27(g), el oficial indicó que el mismo artículo provee un remedio específico si no se cumple una llamada automatizada 48 horas antes, lo cual es impedir el cobro de recargo alguno por la reconexión de electricidad en etapa posterior. Resaltó que, la deuda a favor de Luma, continúa en ascenso desde que se emitió la primera carta y la misma no ha sido objetada por TraFon. Por ello, determinó recomendar al pleno del Negociado de Energía declarar no ha lugar la querella y solicitud de reconexión del sistema eléctrico.

Inconforme, TraFon procuró la reconsideración del referido informe y que Luma se abstuviera de suspender la electricidad, pendiente la adjudicación final de su querella. El informe junto a las mociones posteriores de las partes, fueron consideradas por los cuatro comisionados y su presidente, quienes, mediante la *Resolución Final y Orden* aquí impugnada, resolvieron declarar no ha lugar la querella instada por TraFon, conforme exige el trámite administrativo de rigor. Como anejo a su dictamen, la agencia recurrida consignó lo siguiente:

### Determinaciones de Hechos

1. La parte Querellante tiene una cuenta industrial para servicio eléctrico con LUMA cuyo número es 7754102000.
2. La parte Querellante acumuló una deuda de $7,266,202.22 por concepto de servicio eléctrico.
3. La deuda es una final, firme y exigible.
4. El 3 de julio de 2025, LUMA envió carta sobre deuda y necesidad ponerse al día.
5. El 10 de octubre de 2025, LUMA envió a la parte Querellante comunicación sobre balances pendientes y aviso de desconexión.
6. El 14 de febrero de 2025, la parte Querellante confirmó recibo de la comunicación.
7. El 16 de octubre de 2025, LUMA cursó nuevamente comunicación sobre balances pendientes y aviso de desconexión.
8. El 8 de septiembre de 2025, LUMA envió mensaje telefónico sobre aviso de desconexión. No se envió mensaje por otro método electrónico.
9. El 30 de octubre de 2025, LUMA realizo un corte de servicio de energía eléctrica en la cuenta industrial de la parte Querellante.

### Conclusiones de Derecho

1. La Ley Núm. 57-2014, según enmendada, conocida como, "Ley de Transformación y ALIVIO Energético", dispone en el Articulo 6.27(f) que "si el cliente no efectúa el pago de la factura y no utiliza ni agota el procedimiento para objetar facturas, la compañía de energía certificada podrá suspender el servicio eléctrico de dicho cliente hasta que pague.
2. El Articulo 6.27(g), de la Ley Núm. 57-2014, supra, establece que la "compañía de energía certificada efectuará la suspensión del servicio luego de que haya transcurrido un término de diez (10) días a partir del envío del apercibimiento sobre la suspensión. La compañía de energía notificará al cliente cuarenta y ocho (48) horas antes de la suspensión del servicio, mediante mensaje automático generado vía llamada telefónica al número de contacto del cliente y mediante cualquier otro medio electrónico que obre en expediente del cliente en la compañía de energía. Para que tenga efecto esta disposición, será responsabilidad del cliente mantener actualizada su información de contacto. La suspensión del servicio nunca ocurrirá un viernes, sábado, domingo o día feriado, ni el día laborable anterior a este último. Si

la compañía de energía incumple con este requisito, no podrá cobrar un cargo por reconexión."

3. LUMA envió comunicación sobre la deuda y desconexión de servicio eléctrico al Querellante en al menos tres ocasiones, 3 de julio de 2025, 10 y 16 de octubre de 2025.

4. LUMA envió notificación del apercibimiento sobre la suspensión del servicio eléctrico con al menos 10 días de antelación.

5. LUMA actuó dentro de la Ley al suspender el servicio eléctrico por falta de pago.

6. LUMA emitió una llamada automatizada del 8 de septiembre de 2025 sobre desconexión de servicio, sin información básica de la cuenta.

7. La llamada automatizada de LUMA estuvo fuera de las 48 horas. Tampoco se envió comunicación por otro método alterno.

8. LUMA incumplió con el requisito de notificación de las 48 horas por lo que no podrá cobrar cargos por reconexión.

9. No procede la Querella.

Basado en lo antes, dictaminó que y citamos:

[...]

En el presente caso, claramente transcurrieron los 10 días establecido en la ley a partir del apercibimiento escrito. Según la evidencia admitida en este caso, LUMA emitió comunicaciones apercibiendo sobre la suspensión del servicio eléctrico el 3 de julio de 2025, el 10 de octubre de 2025 y el 16 de octubre de 2025. Por consiguiente, LUMA se encontraba facultado para suspender el servicio eléctrico de la parte Querellante habiendo transcurrido los 10 días del apercibimiento sobre la suspensión del servicio eléctrico.

Por el contrario, el texto del Artículo 6.27(g) provee un remedio especifico ante un incumplimiento de LUMA al requisito de la llamada automatizada de cuarenta y ocho (48) horas antes y/o la falta de comunicación por otro método electrónico. En la última oración de dicho artículo, se estable que en caso de incumplimiento lo que procede es que LUMA no podrá cobrar un cargo por la reconexión de servicio eléctrico a la parte Querellante.

Es menester señalar, que la deuda de la parte Querellante ha continuado en ascenso desde que se emitió la primera carta por parte de LUMA el 3 de julio de 2025. Mas aún, ninguna de las facturas que forman parte de la deuda fueron objetadas por lo que las mismas son finales y firmes.

Aun inconforme, TraFon acude ante esta Curia y señala en su único señalamiento de error lo siguiente:

Erró el Negociado de Energía de Puerto Rico al interpretar erróneamente la última oración del Artículo 6.27(g) de la Ley Núm. 57-2014 y resolver que la frase "este requisito" releva a Luma de cumplir con los requisitos mandatorios de notificación previa a la suspensión del servicio eléctrico, cuando una lectura textual e integral de dicha disposición demuestra que los requisitos contenidos en el Artículo 6.27 constituyen condiciones previas y acumulativas para una suspensión válida del servicio.

En cumplimiento con nuestra *Resolución* emitida el 16 de abril de 2026, Luma acreditó su alegato en oposición, por lo que, con el beneficio de las posturas de las partes, resolvemos.

**II.**

**A. La Revisión Judicial y la Doctrina de la Deferencia Judicial**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9671, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones, una vez la parte adversamente afectada haya agotado todos los remedios disponibles. *Tricoche Matos y otra v. Luis Freire Div. of K.M.A. Associates of PR, Inc.*, 2025 TSPR 92, resuelto el 1 de octubre de 2025. Ahora bien, en el ejercicio de tal facultad, el foro apelativo está obligado a ser deferente a las determinaciones de los organismos administrativos, en consideración a la experiencia y al conocimiento especializado que estas poseen sobre los asuntos que le fueron delegados. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, resuelto el 27 de marzo de 2025. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos, a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56, resuelto el 21 de mayo de 2025.[1] Por último, permite a los foros judiciales velar porque los entes administrativos den cumplimiento a los mandatos constitucionales, en especial, al debido proceso de ley. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743 (2024).

Como se sabe, las agencias administrativas son -en muchas ocasiones- los primeros intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Oficina de Ética Gubernamental,* 2024 TSPR 130, resuelto el 10 de diciembre de 2024. Ahora bien, son los tribunales los que gozan de facultad para interpretar las leyes y la Constitución. *Íd.* Por consiguiente, ante una interpretación

---

[1] Véase, además, *Jusino Rodríguez v. Junta de Retiro del Gobierno de Puerto Rico,* 2024 TSPR 138, resuelto el 26 de diciembre de 2024.

de la agencia que produzca resultados incompatibles o contrarios a su política pública o a su propósito interpretado, la deferencia cede ante la interpretación administrativa. *Íd.* Entiéndase que, los foros judiciales no tienen que ser deferentes ante la interpretación de derecho que realice un organismo administrativo, sencillamente porque la legislación es ambigua. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* supra. Por tanto, al revisar una actuación de una agencia administrativa, el criterio rector es la razonabilidad. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. De manera que, procede la revisión judicial cuando el organismo administrativo haya actuado de forma arbitraria, ilegal, irrazonable o que haya abusado de su discreción. *Íd.*

A tono con lo anterior, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, y su jurisprudencia interpretativa limitan la revisión judicial a tres (3) aspectos: (1) si es apropiado el remedio concedido; (2) si las determinaciones de hechos están basadas en evidencia sustancial; (3) si las conclusiones de derecho fueron correctas. *Freyre Martínez v. Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa,* 2026 TSPR 20, resuelto el 5 de marzo de 2026. De conformidad, a tenor de la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, el dictamen final del ente administrativo sujeto a revisión judicial ha de contener la advertencia sobre el derecho a solicitar reconsideración o revisión judicial, adicional a las determinaciones de hechos y a las conclusiones de derecho. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra.

A tono con lo anterior, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Lo antes, en consideración a la facultad inherente que poseen los foros judiciales de interpretar la ley. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del*

*Condominio Los Corales y otros,* supra.[2] De manera que, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).

Por lo tanto, si al examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023).

## B. Ley Núm. 57 de 27 de mayo de 2014, según enmendada, conocida como Ley de Transformación y Alivio Energético. 22 LPRA § 1054z

**Art. 6.27(f) - Revisión de Facturas sobre el Servicio Eléctrico y Normas para la Suspensión del Servicio Eléctrico.**

[…]

(f) Si el cliente no efectúa el pago de la factura y no utiliza ni agota el procedimiento para objetar facturas, la compañía de energía certificada podrá suspender el servicio eléctrico de dicho cliente hasta que pague. Antes de suspender el servicio, la compañía de energía certificada deberá enviar al cliente un apercibimiento por escrito sobre la eventual suspensión. La compañía de energía certificada no podrá notificar dicho apercibimiento de suspensión antes de que transcurra el término de treinta (30) días que tiene el cliente para pagar u objetar y solicitar una investigación de la factura de cobro bajo el inciso (a)(1) de este Artículo.

(g) La compañía de energía certificada efectuará la suspensión del servicio luego de que haya transcurrido un término de diez (10) días a partir del envío del apercibimiento sobre la suspensión. La compañía de energía notificará al cliente cuarenta y ocho (48) horas antes de la suspensión del servicio, mediante mensaje automático generado vía llamada telefónica al número de contacto del cliente y mediante cualquier otro medio electrónico que obre en expediente del cliente en la

---

[2] En *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros,* supra, el Alto Foro acogió lo resuelto en *Loper Bright Enterprises v. Raimondo,* 603 US 369, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), en donde el Tribunal Supremo Federal pautó el fin de conceder deferencia absoluta a las apreciaciones de derecho de los organismos administrativos. De conformidad, el Alto Foro concluyó que "la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales."

compañía de energía. Para que tenga efecto esta disposición, será responsabilidad del cliente mantener actualizada su información de contacto. La suspensión del servicio nunca ocurrirá un viernes, sábado, domingo o día feriado, ni el día laborable anterior a este último. **Si la compañía de energía incumple con este requisito, no podrá cobrar un cargo por reconexión. (Énfasis nuestro)**

C. **Reglamento Núm. 8863. Reglamento sobre el procedimiento para la revisión de facturas y suspensión del servicio eléctrico por falta de pago**

**Sección 6.02.- Apercibimiento previo a la suspensión del servicio eléctrico.**

Una vez transcurrido el término de treinta (30) días que tiene el Cliente para pagar, objetar solicitar una investigación de la Factura, según definido en este Reglamento, sin que se haya efectuado el pago correspondiente, objetado la Factura o solicitado una investigación esos respectos, o que la determinación del procedimiento de revisión de Factura advenga final y firme, la Compañía de Servicio Eléctrico enviará al Cliente un apercibimiento por escrito sobre la suspensión del servicio e incluirá la fecha exacta a partir de la cual se podrá suspender el mismo. Dicho apercibimiento se le notificará al Cliente al menos diez (10) días previo a iniciar el procedimiento de suspensión.

### III.

En esencia, el recurrente cuestiona el alcance e interpretación del Artículo 6.27(g) de la Ley Núm. 57-2014, *supra*, realizado por la agencia recurrida. Ello, en aras de lograr la revocación del dictamen administrativo que, denegó la querella instada sobre desconexión de servicio de electricidad por falta de pago. A su entender, Luma violentó el debido proceso al incumplir los requisitos estatutarios de una correcta notificación previa. Puntualiza que, a pesar de que la agencia recurrida concluye que Luma no cumplió las exigencias del referido Artículo 6.27(g) sobre el aviso automatizado y la notificación por otros medios electrónicos, no anuló la orden de desconexión del servicio de electricidad. Por ello sostiene que, la suspensión de electricidad no es válida y concluir que solo procede la eliminación de recargos por reconexión, es contrario a la correcta interpretación de la ley y la intención legislativa.

Por su parte, Luma arguye que el análisis y la interpretación de la ley y los reglamentos fue acertada en derecho. Plantea que, la

pretensión de TraFon de que se revoque la determinación administrativa para declarar inválida la desconexión del servicio de electricidad atribuible a la falta de pago por una deuda multimillonaria -que no está en disputa- resulta irrazonable. Sostiene que, el dictamen se fundamenta sobre bases evidenciarias y la debida interpretación de la ley, por lo que procede confirmar la *Resolución Final y Orden* impugnada.

Al examinar el recurso promovido por TraFon, nos corresponde, como foro revisor, justipreciar si la determinación administrativa está basada en evidencia sustancial, si la agencia recurrida haya errado en la aplicación de la ley y si haya actuado de manera irrazonable o arbitrariamente. De esta forma y solo entonces procedería revertir la deferencia que nuestro ordenamiento jurídico permite hacia el pronunciamiento administrativo impugnado.

De nuestro escrutinio sosegado de la causa, observamos que, no está en controversia los hechos propiamente consignados en la *Resolución Final y Orden* recurrida. Es decir, resulta evidente que TraFon le adeuda a Luma, por el servicio de electricidad, por una cantidad que excede los millones de dólares y a esta fecha se considera exigible. Ciertamente, lo antes, no suprime los derechos de la empresa recurrente a las debidas notificaciones y apercibimientos establecidos en nuestro ordenamiento, antes de proceder con el acto de la desconexión del servicio de electricidad por falta de pago.

En atención a lo antes, el expediente demuestra y así lo establece la agencia recurrida que, Luma sí acreditó las notificaciones fehacientes y requeridas en múltiples ocasiones con los términos adecuados. Resulta evidente que TraFon siempre estuvo y ha estado notificado y apercibido dentro de los términos requeridos, sobre las consecuencias de no cumplir con el pago de la deuda que, a todas luces, admite. En el pronunciamiento administrativo se consigna la correcta aplicación del estatuto que así lo requiere.

No obstante, TraFon insiste que la agencia recurrida actuó fuera de los parámetros permitidos al fallar en su interpretación y aplicación del inciso g del artículo 6.27 de la Ley Núm. 57-2014, *supra*, así como sobre el Reglamento Núm. 8863. Precisa que, la agencia incidió al concluir que la única consecuencia por no cumplir lo requerida en dicho artículo sobre la llamada o mensaje automatizado es que Luma no podrá cobrar un cargo por reconexión. En esencia arguye que, el propósito del articulado es requerir la correcta notificación y de no cumplirse no se permite desconectar el servicio de electricidad. En particular señala que, el texto dice "este requisito" en forma singular inmediatamente después de la oración que regula cuando la suspensión no puede efectuarse y por no estar redactada en plural, sostiene que la interpretación adoptada es errada.   No le asiste la razón.

Como se sabe, en la correcta aplicación de nuestra hermenéutica colegimos que, el referido artículo en su inciso (g) en cuestión no adolece de ambigüedad o vaguedad alguna. En su consecuencia el propio texto comunica de forma clara la consecuencia de incumplimiento. La disposición estatutaria es clara y en cumplimiento de sus funciones ministeriales la agencia recurrida no incidió en su análisis.   Añádase que, en este caso tampoco observamos que, la aplicación y la interpretación del estatuto por parte de la agencia resulte en irrazonabilidad o arbitrariedad.

De ahí colegimos que, la parte recurrente no nos ha puesto en posición para concluir que, el incumplimiento de Luma con la notificación de un mensaje automatizado dentro del término, anula las demás notificaciones previas e impide la desconexión del servicio de electricidad por reiterado falta de pago. Tras evaluar sosegadamente el recurso según presentado, colegimos que, los fundamentos expuestos por TraFon resultan insuficientes para revertir la determinación administrativa recurrida.

## IV.

Por todo lo antes, confirmamos el dictamen administrativo recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís

Secretaria del Tribunal de Apelaciones